■ In the Matter of Melissa K., Respondent, v Brian K., Appellant. (And Six Other Related Proceedings.) [898 NYS2d 318]—

---

Garry, J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered August 7, 2008, which, among other things, granted petitioner's application, in seven proceedings pursuant to Family Ct Act articles 6 and 8, for custody of the parties' children.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a son (born in 2000) and a daughter (born in 2003). The parties married in 1999, separated in 2001 and, after a hearing on family offense and custody petitions, stipulated to joint custody of their son. They reconciled approximately one year later and resided together with their children until the first of these proceedings was commenced in November 2006. At that time, the mother commenced proceedings seeking custody of the children and alleging a family offense, and a proceeding seeking modification of the prior joint custody order. The father cross-petitioned for sole legal and physical custody and a temporary order of protection. The father subsequently commenced a custody violation proceeding as well as two proceedings alleging violations of a temporary order of protection that had been granted to the mother against him. After a psychological evaluation of both parties and extensive hearings conducted over the course of more than a year, Family Court dismissed the mother's custody modification petition,* but granted her custody petition, awarding her sole legal and physical custody of both children and providing the father with scheduled parenting time. The court also granted the father's custody violation petition. In addition, the court found that the father had committed the family offense of harassment in the

---

* Family Court found that the prior order had been abandoned by both parties and thereafter treated the custody determination as if it were an initial proceeding, without determining whether a change of circumstances had occurred after the entry of the prior order. This determination was not challenged by either party on appeal and we find no reason to disturb it, noting that the parties' four-year reconciliation and the undisputed severe deterioration of their relationship demonstrated a change of circumstances sufficient to justify modification (see Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1101 [2007]; Matter of Drew v Gillin, 17 AD3d 719, 720 [2005]).

second degree and issued an order of protection. The father now appeals.

The father alleges that Family Court erred in failing to grant sole custody to him or, in the alternative, in failing to award joint custody to both parties. In making any custody determination, the primary concern is the best interests of the child (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]), to be determined "by reviewing such factors as 'maintaining stability for the child, the child's wishes, the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent' " (*Kaczor v Kaczor*, 12 AD3d 956, 958 [2004], quoting *Matter of Smith v Miller*, 4 AD3d 697, 698 [2004]). Additionally, the court must consider "the effect of any alleged domestic violence upon the children" (*Matter of Kilmartin v Kilmartin*, 44 AD3d at 1102; *see* Domestic Relations Law § 240 [1] [a]). According the appropriate "great deference" to Family Court's factual determinations and assessments of credibility (*Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]; *see Kaczor v Kaczor*, 12 AD3d at 958), we agree that joint custody is not feasible.

The record overwhelmingly reveals that the parties' relationship is so tumultuous and acrimonious as to preclude joint decision-making for the benefit of their children. During the pendency of the proceedings, the parties were entirely unable to cooperate, communicate, or deal with one another in a civil fashion; they found it necessary to relay all communication through attorneys and caseworkers and repeatedly required their assistance or that of the police to resolve even minor misunderstandings. The record further supports Family Court's determination that the father's marked hostility for the mother—reflected in such actions as repeated calls to police and child protective authorities to report her alleged transgressions that, in most cases, proved to be without foundation—was primarily responsible for the parties' inability to cooperate (*see Matter of Goldsmith v Goldsmith*, 50 AD3d 1190, 1191 [2008]). Thus, the determination that sole custody is required is amply supported by the record (*see Matter of Martin v Martin*, 45 AD3d 1244, 1245-1246 [2007]; *Matter of Brown v Skalwold*, 228 AD2d 749, 751-752 [1996], *lv dismissed* 89 NY2d 860 [1996]).

The record provides the requisite sound and substantial basis for the award of sole custody to the mother (*see Matter of Siler v Wright*, 64 AD3d at 928; *Matter of Eck v Eck*, 33 AD3d 1082, 1084 [2006]). The father argues that custody should have been awarded to him because the mother has numerous failings that,

in his view, render her an unfit parent. While several of his accusations are refuted or inadequately supported by the record, the evidence does reveal certain significant shortcomings on the mother's part. However, Family Court thoroughly addressed these issues in the course of considering the parties' respective strengths and weaknesses, past performance, and relative fitness as parents (*see Matter of Goldsmith v Goldsmith*, 50 AD3d at 1192-1193; *Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]). We agree with Family Court, and the record reveals, that the mother recognizes her mistakes and takes responsibility for them to a far greater degree than does the father. Further, the evidence supports the court's conclusion that the mother, who had been the children's primary caregiver since their birth and provided for their needs by caring for them when they were ill, transporting them to medical appointments, and arranging and supervising the son's counseling, is aware of and attentive to the children's medical and educational needs (*see Matter of Grant v Grant*, 47 AD3d at 1029; *Matter of Boulerice v Heaney*, 45 AD3d 1217, 1218 [2007]).

Additionally, we agree with Family Court's determination that the mother is the parent more able to foster meaningful contact between the children and the noncustodial parent (*see Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1133 [2010]; *Matter of Marchand v Nazzaro*, 68 AD3d 1216, 1217 [2009]). In contrast to the unrelieved hostility manifested by the father, the mother described him as a loving parent, praised his involvement with the children, acknowledged that their son missed him, and tried to alleviate this by arranging additional visitation, an effort with which the father did not cooperate. Further, although the testimony reveals that both parties have anger management issues and have engaged in incidents of domestic violence, Family Court's determination that the father had verbally and physically abused the mother in front of the children throughout their relationship is fully supported by her testimony, the psychological evaluation, and other credible evidence (*see Matter of Wissink v Wissink*, 301 AD2d 36, 38-39 [2002]). Finally, although not determinative, the court's custody determination was fully supported by the Law Guardians both at trial and on appeal (*see Matter of Diffin v Towne*, 47 AD3d 988, 992 [2008], *lv denied* 10 NY3d 710 [2008]). We therefore find no basis to disturb the court's "well-supported discretionary determination that the child[ren]'s best interests are served by granting the [mother] sole custody, with regular and consistent parenting time with the [father]" (*Matter of Michael CC. v Amber CC.*, 57 AD3d 1037, 1041 [2008]).

Next, the father contends that the evidence was insufficient

to establish that he committed the family offense of harassment in the second degree. To prove that he did so, the mother was required to show that the father, with intent to harass, annoy, or alarm her, had subjected her to physical contact or attempted or threatened such contact (*see* Penal Law § 240.26 [1]; Family Ct Act § 812 [1]; *Matter of Gil v Gil*, 55 AD3d 1024, 1025 [2008]). In this regard, she alleged that, while she was trying to leave the marital residence during an argument with the father, he stepped into the stairway and "bodychecked" her by briskly moving his shoulder against her, causing her to lose her balance and strike the wall and railing. We disagree with the father that the mother's description of this encounter at the initial appearance was inconsistent with that in her petition. While he argues that her account should not have been found to be credible, due deference is to be accorded to Family Court's credibility determinations (*Matter of Gil v Gil*, 55 AD3d at 1025), and the requisite intent may be inferred from the surrounding circumstances (*see Matter of Christina LL.*, 233 AD2d 705, 709 [1996], *lv denied* 89 NY2d 812 [1997]). Thus, a fair preponderance of the evidence supports the court's conclusion that the father committed the family offense of harassment in the second degree (*see* Family Ct Act § 832; *Matter of Boua TT. v Quamy UU.*, 66 AD3d 1165, 1166 [2009], *lv denied* 14 NY3d 702 [2010]).

Finally, the father asserts that he was denied the right to the effective assistance of counsel (*see* Family Ct Act §§ 261, 262 [a] [v]; *Matter of Thompson v Gibeault*, 305 AD2d 873, 875 [2003]) when his attorney rejected a favorable settlement offer on the family offense petition without first consulting him. The offer was made in open court and on the record. The father's attorney rejected this offer, stating that he intended to prove that the mother's allegations were false, despite a clear warning by Family Court that he was pursuing a risky strategy. The father was present to hear the offer, his attorney's rejection and the court's warning, and the record does not, in any manner, indicate that he disagreed with this decision at that time or thereafter as his counsel pursued this strategy. We thus find no reason to conclude that his attorney failed to provide him with "reasonable competence in his representation" (*Matter of Hudson v Hudson*, 279 AD2d 659, 661-662 [2001]).

Cardona, P.J., Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, without costs.